United States District Court
Southern District of Texas
**ENTERED**
April 27, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHLOE MEEKS,** *on behalf of Z.M.B.*, | § § | |
| **Plaintiff,** | § § | |
| v. | § § | **CIVIL ACTION NO. 4:20-CV-286** |
| **ANDREW SAUL,** *Commissioner of Social Security Administration*, | § § § § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Chloe Meeks ("Plaintiff") filed this suit against Defendant Andrew Saul ("Commissioner") on behalf of her daughter, Z.M.B., seeking review of the denial of supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A). (Dkt. No. 1.) Pending before the Court[1] are the parties' cross-motions for summary judgment. (Dkt. Nos. 12 & 13.) Based on the briefing, record, and relevant law, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **GRANTED**, Commissioner's Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for further administrative proceedings.

**I.    BACKGROUND**

Plaintiff is the mother of Z.M.B., a nine-year-old child who has been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder ("ODD"). (R. at 13.)[2] Z.M.B. was also diagnosed with autism, but not until after the ALJ issued a decision

---

[1] On July 1, 2020, the District Judge referred this case to the undersigned for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 8.)

[2] The Administrative Record in this case can be found at Dkt. No. 10.

in the case. (R. at 82.) According to Plaintiff, Z.M.B. has been struggling in school and exhibiting concerning behaviors, particularly since her younger sister was born. (R. at 226-227.)

On April 25, 2017, Plaintiff filed an application under Title XVI of the Social Security Act, seeking benefits for Z.M.B. beginning on November 1, 2016 for ADHD. (R. at 238, 339.) The Social Security Administration denied Plaintiff's claims initially on June 19, 2017 and again on reconsideration on November 2, 2017. (R. at 269, 279.) On January 30, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 285.) ALJ D'Lisa Simmons held a hearing on July 20, 2018 during which Plaintiff and Z.M.B. testified. (R. at 193-212.) The ALJ then postponed the hearing to allow Plaintiff an opportunity to retain counsel and submit additional medical records. (R. at 211-212.) Plaintiff submitted some additional records but was unable to retain counsel, and the ALJ held a second hearing on January 11, 2019. (R. at 213-237.) Plaintiff and Z.M.B. both testified again at the second hearing. (R. at 216-221, 226-235.)

On February 8, 2019, the ALJ denied Plaintiff's application for benefits, finding Z.M.B. not disabled at Step Three of the evaluation process. (R. at 100-116.)[3] At Step One, the ALJ found Z.M.B. has not engaged in substantial gainful activity. (R. at 103.) At Step Two, the ALJ found Z.M.B. has the following severe impairments: ADHD, ODD, and Impulsive Disorder. (R. at 103.) The ALJ also found that any signs Z.M.B. has a speech disorder, autism, or anxiety do not amount

---

[3] In considering a disability application for a claimant under the age of eighteen, an ALJ must conduct a three-step evaluation that examines: "(1) whether the child is engaged in substantial gainful activity; (2) whether the child has an impairment [or combination of impairments] that is severe; and (3) whether the child's impairment [or combination of impairments] is medically or functionally equivalent in severity to the impairments listed in the disability regulations." *Swist ex rel. Green v. Barnhart*, 177 F. App'x 414, 416 (5th Cir. 2006) (quotations omitted); *see* 20 C.F.R. § 416.924. "If the child's impairment or combination of impairments meets or medically or functionally equals a Listing and meets the duration requirement, the child is considered disabled." *Holliday ex rel. D.H. v. Saul*, No. 18-CV-1412, 2019 WL 3323748, at *6 (S.D. Tex. July 9, 2019), *report and recommendation adopted*, 2019 WL 3318559 (July 24, 2019).

to medically determinable impairments. (R. at 103.)[4] At Step Three, the ALJ found Z.M.B. does not have an impairment or combination of impairments that meets or medically equals the listing associated with personality and impulse disorders (Listing 112.08) or neurodevelopment disorders (Listing 112.11). (R. at 103-104.) The ALJ also found Z.M.B. does not have an impairment or combination of impairments that functionally equals either listing. (R. at 105-115.) Therefore, the ALJ found Z.M.B. is not disabled under the Social Security Act. (R. at 115-116.)

Plaintiff appealed the ALJ's decision to the Appeals Council on April 9, 2019. (R. at 336.) Plaintiff submitted supplemental evidence to the Appeals Council, including the autism evaluation and diagnosis. On November 15, 2019, the Appeals Council found Plaintiff's supplemental evidence did not relate to the relevant time period or did not show a reasonable probability that it would change the outcome of the decision, and it denied Plaintiff's request for review. (R. at 1-4.) The ALJ's decision, therefore, represents the Commissioner's final decision in the case. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if . . . the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision."). On January 21, 2020, Plaintiff filed this civil action under 42 U.S.C. § 405(g) seeking reversal of the ALJ's decision and an award of benefits or, in the alternative, remand for further proceedings. (Dkt. No. 1.)[5]

---

[4] A medically determinable impairment "is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

[5] During the administrative process, Plaintiff filed another SSI application on behalf of Z.M.B., and Z.M.B. was found disabled as of February 6, 2019. (Dkt. No. 13 at 4.) The relevant time period in this appeal is therefore November 1, 2016, the alleged onset date, through February 5, 2019. The Court notes that "[w]hether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious *at the time of consideration*." *Winston ex rel. D.F. v. Astrue*, 341 F. App'x 995, 998 (5th Cir. 2009).

## II. STANDARD OF REVIEW

The court's review of a final decision of the Commissioner on a social security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Our review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "'Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive.'" *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602).

Even so, judicial review must not be "so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quotations omitted). The substantial evidence standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 822-23; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823. The court "'may not reweigh the evidence . . . , nor try the issues *de novo*, nor substitute [its] judgment for the [Commissioner's], even if the

evidence preponderates against the [Commissioner's] decision.'" *Johnson v. Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

Summary judgment in social security cases, like others, is governed by Federal Rule of Civil Procedure 56. *See Temple v. Saul*, No. 19-CV-3320, 2020 WL 6075644, at *2 (S.D. Tex. Oct. 14, 2020). Under Rule 56, summary judgment is proper when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "When parties file cross-motions for summary judgment, [courts] review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quotations omitted).

### III. DISCUSSION

Plaintiff argues the ALJ erred by failing to develop the record, especially in light of the fact that she was unrepresented by counsel. (Dkt. No. 13.) Plaintiff identifies three pieces of evidence that she believes the ALJ should have obtained—or at least allowed Plaintiff more time to submit—before denying her benefits: (1) treatment notes from Farhat Siddiqui, M.D. at the Harris Center for Mental Health dated January 17, 2019 ("Dr. Siddiqui's Notes"); (2) a Vanderbilt Assessment performed by Z.M.B.'s first-grade teacher on January 23, 2019 ("First Grade Assessment"); and (3) a psychological evaluation performed by Kimberly Demby, Ph.D. at the Adolescent Center for Mental Health Services dated March 20, 2019 ("Dr. Demby's Evaluation"). (*Id.* at 5-11.) According to Plaintiff, had the ALJ obtained and considered this evidence, the outcome of the case would have been different. (*Id.* at 11-14.)

Commissioner recognizes that the ALJ had a heightened duty to develop the record because Plaintiff was not represented by an attorney. (Dkt. No. 14 at 2.) However, Commissioner argues

the ALJ met this heightened duty by delaying the hearing to give Plaintiff an opportunity to obtain counsel, thoroughly questioning Plaintiff and Z.M.B. at both hearings, and giving Plaintiff an opportunity to provide updated records under a clear deadline. (*Id.* at 2-3.) In any event, Commissioner argues Plaintiff has not established she was prejudiced by any error and the ALJ's decision was otherwise supported by substantial evidence. (*Id.* at 3-4; *see* Dkt. No. 12-1 at 5-17.) The Court agrees with Commissioner that the ALJ satisfied her duty to develop the record.

However, the Court finds that the Appeals Council committed reversible error by failing to consider Dr. Demby's Evaluation simply because it was dated after the ALJ's decision. Because the Court cannot evaluate this evidence in the first instance—and because it contains a diagnosis that could significantly impact the disability determination—the case must be remanded.

### A. The Administrative Hearing and Relevant Evidence

As described above, the ALJ held the first administrative hearing on July 20, 2018. (R. at 193-212.) The ALJ and Plaintiff discussed what records were missing at the time—including two Vanderbilt Assessments from Z.M.B.'s kindergarten teachers, records from the Harris Center dating back to 2017, and records from Premier Pediatrics dated after September 2016—and the ALJ agreed to help Plaintiff obtain them. (R. at 204-208, 210-211.) The ALJ also heard testimony from Z.M.B. and Plaintiff. Z.M.B. testified about her friends and family, favorite subjects in school, daily activities, and what she wants to be when she grows up. (R. at 197-202.) Z.M.B. also stated that she does not get in fights at school and has never gotten in trouble on the bus. (R. at 201.) Plaintiff testified that Z.M.B. takes medication for ADHD and ODD, but that the effects wear off around lunchtime. (R. at 208-209.) The ALJ then postponed the hearing so Plaintiff could find counsel and submit additional records. (R. at 203-204, 211-212.)

Meanwhile, the ALJ attempted to obtain the missing records discussed at the hearing. The ALJ contacted Humble Independent School District ("HISD") three times—on July 24, August 7, and August 18, 2018—but received no response. (R. at 184.) The Harris Center records from before 2017 and the Premier Pediatrics records from after September 2016 appear to have already been obtained by the Social Security Administration. (R. at 527-579 (medical records containing releases and record requests dated May 19 and September 14, 2017).) In any event, they were added to the file.

The ALJ held the second hearing on January 11, 2019. (R. at 213-237.) Plaintiff was unable to retain counsel; however, she did bring updated medical records and school reports which were admitted to the record. (R. at 223; *see* R. at 182 (indicating Plaintiff's supplemental records were labeled as exhibit 6F).) These school reports included the information the ALJ had tried to obtain directly from HISD, particularly the two Vanderbilt Assessments performed by Z.M.B.'s kindergarten teachers. (R. at 616-619.) Therefore, all of the missing evidence identified during the first hearing was obtained and admitted to the record by the second hearing.

At the second hearing, the ALJ again heard testimony from Z.M.B. and Plaintiff. Z.M.B. testified that her favorite subject is math, she plays at the park after school, she has a one-year-old sister, and she wants to be a police officer or the president when she grows up. (R. at 216-220.) The ALJ asked Z.M.B. whether she likes to play with knives—to which Z.M.B. responded, "not anymore"—and whether she picks at her skin—to which Z.M.B. responded, "sometimes." (R. at 220.) Z.M.B. also testified that she takes medication every day. (R. at 218.) Plaintiff testified that the doctor had changed Z.M.B.'s medication to prevent it from wearing off, but that this only helped a little. (R. at 227.) Plaintiff also testified that Z.M.B. had a meltdown at school in which she ran screaming and crying to a restricted area, and Plaintiff had to go to the school to calm her

down. (R. at 227-228.) Further, according to Plaintiff, Z.M.B. exhibits other inappropriate behavior such as stealing from the grocery store and having bowel movements on herself, which she then puts on the bathroom walls. (R. at 228, 231.) Z.M.B. is receiving 504 accommodations at school. (R. at 234.)

At the end of the hearing, the ALJ gave Plaintiff the opportunity to submit additional evidence before the decision, which the ALJ anticipated would "probably be [in] about six to eight weeks." (R. at 235.) However, the ALJ then indicated that she was not going to keep the record open indefinitely and that Plaintiff should submit any documents she had by the following week. (R. at 235; *see also* R. at 224 (indicating Plaintiff had other records that she had not yet submitted).) The ALJ also stated that she would look at any records submitted by Plaintiff "up until the day the decision goes out." (R. at 236.) Plaintiff did not submit anything further to the ALJ, and the ALJ issued her decision on February 8, 2019.

Plaintiff did submit additional evidence when she appealed the ALJ's decision to the Appeals Council, including the three records she now argues the ALJ should have obtained before issuing a decision: the First Grade Assessment, Dr. Demby's Evaluation, and Dr. Siddiqui's Notes. The Appeals Council found that the First Grade Assessment—along with other evidence dated before the ALJ's decision—did not "show a reasonable probability that it would change the outcome of the decision." (R. at 2.) The Appeals Council further found that Dr. Demby's Evaluation—along with other evidence dated after the ALJ's decision—did not relate to the period at issue. (R. at 2.) The Appeals Council did not specifically reference Dr. Siddiqui's Notes in its decision, although Commissioner recognizes they were submitted. (*See* Dkt. No. 14 at 4.) The Appeals Council denied Plaintiff's request for review on November 15, 2019. (R. at 1.)

Dr. Demby's Evaluation is most relevant to the appeal before this Court. Dr. Demby evaluated Z.M.B. on February 7, 2019—the day before the ALJ's decision—and on March 7, 2019. (R. at 70.) Dr. Demby administered a cognitive assessment in which she found Z.M.B. to be in the low average range and a behavior assessment in which she found Z.M.B. to be within the "extreme caution" range. (R. at 74.) Dr. Demby also performed two autism assessments and noted that Z.M.B.'s "longstanding history of social difficulties and developmental concerns (e.g., hypersensitivity to sensory input such as overeating, biting of the hands, tearing items, and hair pulling, as well as difficulty establishing relationships, insistence on sameness, and fixated interests) are hallmark traits of [Autism Spectrum Disorder]." (R. at 82.) Ultimately, Dr. Demby diagnosed Z.M.B. with autism and opined that Z.M.B. would require "very substantial individual attention and guidance to function and [would] need intensive academic and behavioral programming." (R. at 80, 82.) This report was issued on March 20, 2019. (R. at 70.)[6]

**B. The ALJ Satisfied Her Heightened Duty To Develop The Record.**

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). When a claimant is unrepresented by counsel at the administrative level, this duty is heightened and the ALJ is required to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984)

---

[6] The other two pieces of evidence contain information on Z.M.B.'s other symptoms and impairments. In the First Grade Assessment, Z.M.B.'s teacher reported that she exhibited twenty-six of the thirty-five ADHD symptoms "often" or "very often" and that her academic and classroom behavioral performance was "somewhat of a problem" or "problematic" in each of the eight categories. (R. at 138-139.) In Dr. Siddiqui's Notes dated January 17, 2019, he reported there had been no complaints from school but that Z.M.B. "remain[ed] oppositional at home," had recently tried to steal items from a store, and continued to bite her nails. (R. at 140.)

(quotations omitted); *see also Cummins v. Berryhill*, No. 17-CV-1309, 2019 WL 1407490, at *3 (S.D. Tex. Mar. 28, 2019). The failure of an ALJ to fully and fairly develop the record, however, does not automatically warrant reversal. *Kane*, 731 F.2d at 1220. Instead, a plaintiff must demonstrate prejudice—*i.e.* that, "had the ALJ done his duty, she could and would have adduced evidence that might have altered the result." *Id.*; *see also Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).[7] A reviewing court, therefore, should "reverse the decision of an ALJ as not supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby." *Brock*, 84 F.3d at 728.

The ALJ satisfied her heightened duty to fully and fairly develop the record for several reasons. First, the ALJ helped Plaintiff obtain relevant medical records. Under the regulations, the ALJ must "make every reasonable effort to help [claimants] get medical evidence from [their] own medical sources." 20 C.F.R. § 416.912(b)(1); *see Newton*, 209 F.3d at 457. "Every reasonable effort" requires the ALJ to make an initial request and one follow-up request for evidence; it does not require that the ALJ actually obtain the evidence requested. 20 C.F.R. § 416.912(b)(1)(i); *see Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015) ("[I]mposing a duty on the ALJ to *obtain* all of a claimant's medical records would be in tension with the C.F.R.'s explicit provision[s]."). The claimant also has an ongoing responsibility to submit additional evidence related to his or her disability, even when unrepresented by counsel. 20 C.F.R. § 416.912(a)(1).[8]

---

[7] "[A]lthough the ALJ has a duty to develop the record, the ultimate burden rests with the claimant to provide evidence of her disability." *Hernandez v. Saul*, No. 18-CV-55, 2019 WL 4482942, at *5 (W.D. Tex. Sept. 18, 2019) (citing 42 U.S.C. § 423(d)(5)(A)).

[8] "[W]hile it is the ALJ's duty to develop the record, it is not the ALJ's duty to become the claimant's advocate." *Winston v. Comm'r*, No. 07-CV-134, 2008 WL 4412233, at *7 (E.D. Tex. Sept. 23, 2008), *aff'd*, 341 F. App'x 995 (5th Cir. 2009).

At the first hearing, the ALJ discussed what records were missing and then delayed the hearing so Plaintiff could retain counsel and submit additional records. (R. at 203-208, 210-212.) The ALJ then made several requests—including an initial and two follow-up requests—to obtain records from HISD. (R. at 184.) The ALJ also took care to ensure all of the missing records identified at the first hearing were admitted at the second hearing. Finally, the ALJ notified Plaintiff that she should submit any additional records the week after the second hearing or as soon as they became available. (R. at 235-236.) Plaintiff did not do so, even though two of the three pieces of evidence at issue—Dr. Siddiqui's Notes and the First Grade Assessment—were dated at least two weeks before the ALJ's February 8, 2019 decision.[9] The third piece of evidence at issue—Dr. Demby's Evaluation—was not initiated until February 7, 2019, the day before the ALJ's decision, and was not issued until March 20, 2019. (R. at 70.) To the extent Plaintiff argues the ALJ should have delayed the decision six to eight weeks from the second hearing, the ALJ never promised to do so and Plaintiff provides no authority that the duty to develop the record imposes such a requirement.

Second, the ALJ carefully elicited testimony from Z.M.B. and Plaintiff at both hearings. "[The Fifth Circuit] has described the ALJ's duty [to develop the record] as one of developing all relevant facts, not collecting all existing records. Consistent with that description, the court often focuses on the ALJ's questioning of the claimant in order to determine whether the ALJ gathered the information necessary to make a disability determination." *Sun*, 793 F.3d at 509 (quotations and citations omitted). In other words, an ALJ can satisfy the heightened duty to develop the record by "asking the claimant about his medical condition, the effectiveness of treatment, how the

---

[9] *See* R. at 140-147 (Dr. Siddiqui's Notes dated January 17, 2019); R. at 138-139 (First Grade Assessment dated January 23, 2019).

claimant's daily routine has been affected by his medical problems, his ability to perform various tasks, and by inviting the claimant to include anything else in the record." *Vine v. Astrue*, No. 10-CV-895, 2010 WL 4791487, at *6 (N.D. Tex. Nov. 18, 2010); *see also Hernandez v. Saul*, No. 18-CV-55, 2019 WL 4482942, at *5 (W.D. Tex. Sept. 18, 2019).

Here, the ALJ elicited testimony from Z.M.B. about her friends, school experience, medications, and behaviors such as playing with knives and picking at her skin. (R. at 197-203, 216-221.) The ALJ elicited testimony from Plaintiff about Z.M.B.'s diagnoses and treatment, behavior at school, and other concerning behaviors such as playing with feces and stealing items from the grocery store. (R. at 203-212, 226-235.) And, as described above, the ALJ gave Plaintiff multiple opportunities to submit additional evidence to the record. The ALJ developed enough relevant facts to sufficiently satisfy her duty. *See, e.g.*, *Castillo v. Barnhart*, 325 F.3d 550, 553 (5th Cir. 2003) ("[T]he ALJ questioned Castillo and her husband regarding her age, education, ability to read and comprehend, past relevant work, impairments, vision problems, and medical testing and treatment, and gave [them] opportunities to add anything else to the record. We conclude that the ALJ's questions and the Castillos' opportunities to add additional information into the record satisfied the ALJ's heightened duty to develop the record."); *Brock*, 84 F.3d at 728 (finding the ALJ satisfied the duty to develop the record through extensive questioning at the administrative hearing and by inviting plaintiff to submit additional evidence).

Finally, even without the three pieces of evidence at issue, the ALJ had numerous other evidence from which she could evaluate Z.M.B.'s disability. This includes: function reports (R. at 353-362, 437-443); teacher questionnaires and assessments (R. at 377-384, 427-434, 616-619); other school documents (R. at 417-418, 581-586); medical treatment records (R. at 468-578, 587-614, 623-631); and hearing testimony (R. at 197-212, 216-235). The ALJ, therefore, did not err by

failing to develop the record. *See, e.g.*, *Winston ex rel. D.F. v. Astrue*, 341 F. App'x 995, 997-98 (5th Cir. 2009) (finding that the ALJ fulfilled the heightened duty to develop the record, even though certain pieces of evidence were missing, because the record did contain doctor evaluations, teacher assessments, and testimony that addressed plaintiff's ADHD). As a result, the Court need not analyze whether Plaintiff has demonstrated prejudice in this regard, and the Court finds that Plaintiff's primary assignment of error lacks merit.

### C. The Appeals Council Erred In Disregarding Dr. Demby's Evaluation.

The Court, however, must address the Appeals Council's treatment of the evidence at issue, which Plaintiff submitted to it after the ALJ's decision.[10] "When a claimant submits new and material evidence that relates to the period before the date of the ALJ's decision, the Appeals Council must consider the evidence in deciding whether to grant a request for review." *Nobles v. Saul*, No. 19-CV-1459, 2020 WL 5996437, at *11 (N.D. Tex. Sept. 21, 2020) (citing 20 C.F.R. § 416.1470(b)), *report and recommendation adopted*, 2020 WL 5994269 (Oct. 9, 2020). "Once considered, the new evidence becomes part of the administrative record upon which the final decision is based, and a reviewing court must determine whether the denial of benefits is supported by substantial evidence, in light of the new evidence." *Hamilton v. Berryhill*, No. 16-CV-865, 2018 WL 2074811, at *5 (S.D. Miss. May 3, 2018); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). On the other hand, if the Appeals Council does not consider the new and material evidence, that evidence does not constitute an evidentiary basis for the Commissioner's

---

[10] Although Plaintiff does not directly argue the Appeals Council erred, she implicates this issue by identifying evidence that was presented to the Appeals Council and arguing generally it was improperly considered. Commissioner also addresses potential error by the Appeals Council in his response. (*See* Dkt. No. 14 at 4-5.) Furthermore, as described below, the Court cannot determine whether the ALJ's decision is supported by substantial evidence when the Appeals Council makes certain errors. The Court, therefore, finds it necessary to address this issue.

decision and the reviewing court cannot necessarily determine whether substantial evidence supports the denial of benefits. *Johnson v. Berryhill*, No. 16-CV-241, 2017 WL 2964882, at *5-8 (N.D. Tex. June 26, 2017), *report and recommendation adopted*, 2017 WL 2954914 (July 11, 2017); *see also Hamilton*, 2018 WL 2074811, at *5. The latter is true in this case.

"Newly submitted evidence is material if (1) it relates to the time period for which the disability benefits were denied, and (2) there is a reasonable probability that it would have changed the outcome of the disability determination." *Nobles*, 2020 WL 5996437, at *11 (citing *Castillo*, 325 F.3d at 551-52). Evidence of a later-acquired disability or a subsequent deterioration of a condition is not material. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). However, evidence that is dated after the ALJ's decision may nonetheless meet the standard. *See Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000) (explaining the relevance of subsequent medical evidence); *Johnson*, 2017 WL 2964882, at *6 ("While the date is undoubtedly relevant, the date alone does not make the evidence unrelated to [the] time period on or before the ALJ's decision.").[11] In fact, "[t]he [Appeals Council] applies an erroneous standard if it narrowly construes the regulations as drawing a bright line based upon the date of submitted evidence." *Johnson*, 2017 WL 2964882, at *6.

Here, the Appeals Council denied Plaintiff's request for review despite the newly submitted evidence. As to the First Grade Assessment, the Appeals Council stated: "You submitted . . . a five-page Vanderbilt Assessment Scale from January 23, 2019[.] We find this evidence does not

---

[11] The regulations do not narrowly confine material evidence to records or reports dated before the ALJ's decision. *See* 20 C.F.R. § 416.1470(a)(5) (broadly stating the evidence must "relate[] to" the period in question); *see also Charles A. v. Berryhill*, No. 17-CV-2574, 2019 WL 1130260, at *3 (N.D. Tex. Feb. 22, 2019) ("The phrase 'relates to,' as used in the Social Security regulations, is purposefully broad and not restricted merely to records or reports dated on or before the ALJ's decision."), *report and recommendation adopted*, 2019 WL 1128836 (Mar. 12, 2019).

show a reasonable probability that it would change the outcome of the decision." (R. at 2.) As to Dr. Demby's Evaluation, the Appeals Council stated: "You submitted . . . a 19-page Psychological Evaluation dated March 20, 2019[.] The Administrative Law Judge decided your case through February 8, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 8, 2019." (R. at 2.) In other words, the Appeals Council apparently found Dr. Demby's Evaluation was not material because it was dated after the ALJ's decision.

This is a legal error. As stated above, subsequent medical records can be material if they *relate to* the period in question, which is not necessarily determined by the date of the evidence. Dr. Demby's Evaluation is likely material here, especially given the close timing between the ALJ's decision and the evaluation—about one and a half months—and given the autism diagnosis contained in the evaluation. *See Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997) ("Retrospective medical diagnoses constitute relevant evidence of pre-expiration disability[.]"); *Johnson*, 2017 WL 2964882, at *6 (explaining that the closer in time the new evidence and decision are, the more likely the new evidence relates to the time period in question). Moreover, there is no indication in the record that the new evidence is the result of any change in Z.M.B.'s condition or that an intervening event worsened her condition. *See Johnson*, 2017 WL 2964882, at *7 ("Courts may reasonably infer that a [subsequent] medical report relates to the proper time period when there is no indication that plaintiff's condition deteriorated during the intervening period.") (quotations omitted). The Appeals Council should not have disregarded Dr. Demby's Evaluation simply because of its date.

The impact of this error on Z.M.B.'s entitlement to benefits could be profound. No factfinder at the administrative level considered or analyzed Dr. Demby's Evaluation, and it is not

the Court's role to determine the significance of new evidence in the first instance. *See Miles v. Berryhill*, No. 16-CV-1013, 2017 WL 2535855, at *5 (N.D. Tex. May 6, 2017) ("[T]his Court may not evaluate in the first instance Dr. Olusanya's assessment, the credibility or weight it should be afforded, or the medical evidence relied upon for its creation. That power lies exclusively with the Commissioner."), *report and recommendation adopted*, 2017 WL 2533435 (June 9, 2017). Based on the ALJ's explanation of her decision, a diagnosis of autism could certainly have changed the outcome. In finding autism was not one of Z.M.B.'s medically determinable impairments, the ALJ stated that the medical evidence did not support the impairment: "treatment records documented the claimant's mother reported various signs and symptoms related to possible autism, but there were no correlating testing results, and treatment records did not show a definitive autism diagnosis." (R. at 103.) Dr. Demby's Evaluation, however, provides such a diagnosis and potentially corroborates Plaintiff's allegations about the severity of Z.M.B.'s symptoms. It thus could have significantly impacted the ALJ's analysis.[12]

As a result, the Court cannot determine whether Z.M.B. was prejudiced by the Appeals Council's error or whether the decision denying her benefits is supported by substantial evidence.[13] *See, e.g.*, *Charles A. v. Berryhill*, No. 17-CV-2574, 2019 WL 1130260, at *3-4 (N.D. Tex. Feb. 22, 2019) (noting the court was unable to determine whether the ALJ's decision was based on substantial evidence because new records submitted to the Appeals Council—which the Appeals

---

[12] Had the ALJ found autism to be a medically determinable impairment, she would have been required to evaluate whether it met, medically equaled, or functionally equaled the associated listing (Listing 112.10). If so, Z.M.B. would have been considered disabled.

[13] "[T]he failure of the [Appeals Council] to consider and evaluate the new evidence essentially means that the evidence is not an evidentiary basis for the decision and does not become part of the Commissioner's final decision. Under these circumstances, the Court should find that it is unable to determine whether substantial evidence supports the ALJ's denial of benefits." *Johnson*, 2017 WL 2964882, at *8.

Council found irrelevant due to their date—were significant and no factfinder at the administrative level had evaluated them), *report and recommendation adopted*, 2019 WL 1128836 (Mar. 12, 2019); *Jennings v. Comm'r of Soc. Sec.*, No. 15-CV-2883, 2017 WL 1885811, at *8 (W.D. La. Mar. 20, 2017) (same), *report and recommendation adopted*, 2017 WL 1901426 (May 5, 2017). The Court, therefore, recommends remand for consideration of Dr. Demby's Evaluation and its impact on whether Z.M.B. was disabled during the relevant time period.

IV.     CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment (Dkt. No. 13) be **GRANTED**, Commissioner's Motion for Summary Judgment (Dkt. No. 12) be **DENIED**, and the case be **REMANDED** for further administrative proceedings.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on April 27, 2021.

Sam S. Sheldon
United States Magistrate Judge